It's all the way up, Your Honor, the podium's at maximum. I'll get closer to Mike. Thank you. I call them permanent employees because that is what they are referred to in the Monarch Fire Department's own rules. And the rules are explicit that there's a course of amplified discipline that is to be applied to employees who are facing any kind of discipline. And there's a sequence of events that should go through, and that no one is to be terminated without a pre-termination hearing. So the question- How do you get by the, apparently the fact that your clients never asked for one pre or post hearing? Your Honor, the response to that is as follows. First, they were called in without any warning to the fire chief's office. The fire chief told them they had the choice at that moment to resign or to be terminated. They asked for a minute to think about it. They went back and said, we're not resigning. The chief did testify, and we referenced in our case, that at some point, he couldn't remember exactly when, whether it was that day or the following day, they asked, don't we get a hearing? And I have that citation in our brief. But there's no requirement to call for a post-termination hearing. Missouri law is clear that if the claim is lack of a pre-termination hearing, whether or not one asks for a post-termination hearing is irrelevant to the claim. And the timing was such, a load of bricks landing on someone, and when they said no, we're not resigning, they were escorted out by armed St. Louis County police officers. It's not really a situation that's conducive to it. Furthermore, the rules of the Monarch Fire Department require the agency, the fire department, to provide the pre-termination hearing. There's no provision in there for a hearing to be demanded by a permanent employee being terminated. It's to be provided, and that's pretty explicit there, Your Honor. So, if you go through the record and you read the statement of facts in our brief, and you read the statement of facts in the fire department's brief, you'll have a very, very different view of what the facts are. We cite the different pages where people seem to say things that are conflicting with each other. And that's something, I think, for the finder of fact to work out. Counsel, wouldn't it be a matter for you to establish that your plaintiffs aren't at will employees? I believe I did establish that, Your Honor. On the notion of establishment, what I was trying to get to is that there are multiple conflicts of fact here. So this is not a proper case for summary judgment, which is how it was resolved below, was summary judgment. The evidence that we presented that they were at will, the fire chief testified that the employees were not at will. The rules and regulations of the fire department refer to them as being permanent employees who will only be terminated for cause. This is in contrast to Daniel's case, which we rely on heavily, in which the rules of the University of Missouri had both a provision requiring- You're talking about, are you talking about the rules that the chief? The rules of the fire department, that the chief is the officer who signs the rules. The same rules that weren't approved by the body in the city? They say they weren't approved. The evidence is pretty clear that they were. And now Chief Beal testified that when he first started at the fire department 45 years before these events, he was presented as a new firefighter with a set of rules saying these are the rules of the fire department. They apply to you and apply to everyone. Through his career, moving up the chain, working with different boards, everyone said these are the rules. The evidence was that from time to time, due often to a change in law, the board would then reconsider a particular rule. They would revise that rule, they would vote on and approve that changed rule. There's no evidence in the record that the rules as a whole were at some point in the past voted on. What we're talking about, ancient history, well more than 45 years. And small agencies like fire departments don't necessarily keep the best records in the world. But there's plenty of evidence here from which a finder fact could reach the inference from the method of change, from how the rules were presented to each of these plaintiffs throughout their careers, how the chief, who was the chief administrative officer, viewed the rules and said, these are the rules. And I believe his testimony was, no, they didn't vote to restore them. You don't vote on the same rules over and over again. Once they're in place, they're in place. And these were always in place. What about the Missouri Supreme Court and Johnson saying that the rules, policies, handbooks, all that do not change the status of an at-will employee. In other words, as I understand Johnson, it says everything that you're arguing now doesn't make a difference. They're at-will employees. How do you distinguish that? Well, I think that what I would say about Johnson is that Johnson decided a little over 25 years ago, the Missouri Supreme Court has had, tends to sit back for a long time while the courts of appeals work out these issues. The Daniels case, which is a pretty recent Missouri Court of Appeals, Western District. I understand your argument that you briefed that, but you're asking us to try, our job is try to interpret Missouri law. And when the Missouri Supreme Court speaks, how in the world do we write an opinion that says, well, we think they spoke, but they probably have changed their mind. Well, I think if you- That's hard for us to read the tea leaves. I understand your issue, your honor. I don't think that Johnson for state goals all possible relationships other than that will. I think it allows for the possibility that an employer can in fact make a permanent employee, as these employees were described in the rules of this agency. And for example, in the areas of termination, the Missouri Supreme Court has in fact adopted a number of public policy exceptions to at will terminations. And that was a course of over 25 years also, where the various courts of appeals filling in the gaps between what the Supreme Court had said before, which was similar to Johnson. Said well, here's an exception because of this rule, here's an exception because of this statute. And then eventually the Supreme Court four years ago revisited the cases, took the transfer and said the court of appeals have it right and we have an exception for public policy here. And I think that the same process is underway here. And I would like these firefighters to be on the edge where that is caught. If this court had extreme doubts one way or other about what the Supreme Court would do, whether it would in fact follow the course of what the courts of appeals are doing in Missouri, you always have the option of course to refer the question to them. We haven't asked for that, but if it's a close question for you, I think that is an available course. In distinguishing these rules and regs from sort of the Johnson handbook, okay, I sense that's what you were doing when you were saying they called them permanent employees. But you also said that they could only be terminated for cause. Where is that in the rules and regulations? I didn't bring the rules up. It says that the rules are designed to help everyone do a better job. It's designed to protect the rights of the employees to their employment. And that we have a progressive series of discipline so that if an employee is not doing their job well, they'll go through this series of disciplines, they'll get feedback. It provides further that in a case of exigent case where misconduct is so extreme that immediate termination is required, even in that case, the employee is going to get a pre-termination hearing so they can present their point of view. So that set of what you're describing, procedures, you think that that then amounts to a just cause? Yes, and that's what Daniels held, the Missouri Court of Appeals. So the fact that you have these kind of procedures means that cause is the ground for termination. One thing, going through the hearings, I think the district court got in the wrong way when they started talking about Missouri Administrative Procedures Act, MAPA. And concluding that because a request for pre-termination wasn't made, that MAPA requires an employee to do this, and failure to do this waives their claim. MAPA doesn't create any right or requirement for administrative hearing. What MAPA says is that if there is an administrative hearing provided by some other law or regulation, that this is how the courts handle judicial review of that. You determine whether it's a contested or non-contested case. Contested cases have this series of process, non-contested cases have this series of process. In the Missouri law, the pre-termination hearing that Monarch provided would be a non-contested hearing. There's no right to present witnesses, there's no right to cross-examine. There's a right to come in, have the charges against you explained, have an opportunity to respond. But you don't get the kind of due process that one would have in a hearing, that a contested hearing under Missouri law. So it's that. I also want to talk a little bit about the name clearing hearing. We had evidence of a fairly substantial amount of defamation by Monarch against these employees. In connection with the announcement, and follow-up announcement. Yes, Sean. Was a hearing requested? With- The name clearing hearing. No, and I'm explaining why I believe that that's not a problem. It was not requested, and I believe it's not a problem. And I would perhaps characterize this as an area where there may be a need for some extension or modification of law. And the reason is, is that the old rule is a rule that predates the Internet. In this case, there wasn't some paper in their file that said you were engaged in sexism and abuse of women, and they have an opportunity to say, wait a second, before this gets out, I want a hearing to clear my name before you do this. No, they were terminated, and then in a public meeting in front of 100 citizens in that community. And within the fire district, the two directors made these statements. They were covered in the newspaper, they were everywhere on the Internet. At the next meeting, they again elaborated further on that. The transcripts are published on Monarch's website, saying all these negative things. What Winskowski says, that's the case that says you have to ask for a name hearing, it says that it should be available at a meaningful time. Well here, there was no meaningful time in which to request a name clearing hearing, because by the time that the negative statements were made for the first time, it was made to the entire world, it was made in public, in a large meeting, covered by the newspapers, covered by radio and television. There was not a meaningful time to get a hearing. You could not, and as I believe it was, Mr. Cruz said, and his deposition says, if you can reverse- Is there any case established for the proposition that you want us to- No, Your Honor, that's why I say I believe it's a required extension of law. I think the notion that one can, in all cases, must request a hearing doesn't make any sense when you're in an environment where the defamatory statements were not made in some sort of closed personal thing in a person's file, but instead made public and publicly disseminated in such a way that it becomes part of the permanent record of these people in the world before they have a chance to even react. And to say- What you're asking for is more a preemptive strike of an injunction or something to keep them from making the statements. But a name-clearing hearing is obvious from its name, which is it's a name-clearing, it's a rebutting of what has already come. It's not to prevent them from making the statements. So I don't think what you're asking fits into the rule of law here of a name-clearing hearing. Well, Your Honor, I think the name-clearing hearings, from reading the cases that I read here, it's typically in a position that someone's called in, they're being terminated, and they're told in termination, we're terminating you because you were stealing money from funds or whatever, or you were giving contracts. The company hasn't gone out and published it everywhere, so the cat is not out of the bag. You've been told that these negative things are going to be said about you, or could be in your record, and are going to be provided to somebody you want to apply a job for. And you come in, you ask for a hearing, so you can clear your name, so that it's- This is a little bit off track, but you have published opinions from the Missouri Court of Appeals, I think it was, that discusses all of this. And that's public information. Why is this any worse, what they get up and say it anyway, when you have a published opinion that already- Your Honor, the published opinion doesn't address these individuals. These individuals weren't accused of being personally involved in any of the misconduct. The fire department was, and what they were terminated for was because they were command level people who allowed their subordinates, supposedly, to go off and engage in this misconduct. But the statements that were made at the hearing tarred them. It's that they created a dangerous place, a hostile environment. It made accusations against them individually that were not in the Court of Appeals' decision. The Court of Appeals, these guys weren't named as wrongdoers in the Court of Appeals' opinion. Thank you. My time is up. I reserve the rest for rebuttal. Thank you. Morning, Mr. Hughes. Good morning, Your Honor. May it please the court, I think that ultimately, in a nutshell, the answer is that the Johnson case is controlling under the facts and circumstances of this case. It is the highest court, the Missouri Supreme Court, has spoken on this issue. And the suggestion that, well, it takes them a while to react and they kind of let the Court of Appeals, the lower courts, decide these things. There's just no basis in fact for that. It is the standard, it is the law, it's never been reversed. And the law in Missouri is that there's not a handbook exception to the at will employee doctrine. In this case, these three individuals were at will employees and they were terminated as such. With respect to just addressing in sort of reverse order, because it was one of the last points that Mr. Jacobson made regarding no meaningful time to request a hearing. There were no stateful, first of all, there was nothing before the record in the district court with respect to any statements that was sufficient to create an evidentiary issue. In order to be admissible to rebut a motion for summary judgment, the information in the lower court has to essentially qualify as evidence. These newspaper articles and reports were not supported by any type of affidavit, deposition, or anything else to create a foundation for them to actually be considered evidence in the lower court. So technically this, not technically, in fact, the lower court had no evidence of detrimental statements made by the members of the board against these three individuals. Further, there was nothing that was stated in those statements, if the court were even going to consider them, that was immoral, illegal, unjust, or racist. And I think that's the standard that's clearly set forth under the law. The Sunshine Act required that this meeting be held, and I think that's important to understand here. This wasn't just a group of people who said, hey, let's have a meeting and call the press. They were required to announce this decision within 72 hours, and that's the circumstance under which the decision was announced. With respect to the reply brief of the plaintiff, I'd like to point out a couple of things that are just simply misstatements of the record in this case. We obviously, as you know, don't have an opportunity to respond to the reply brief, and I don't know what Mr. Jacobson would raise during his rebuttal time. But I'd like to point out a couple of things. First of all, there's never been a circumstance where the board of the Monarch Fire Protection District applied these rules and regulations in disciplining a chief officer. The plaintiffs misstate the record in the reply brief at page three, suggesting that with respect to Chief Kerry Spiegel, there had been some sort of an application of these rules. I would simply point out that they use a portion of testimony by a different individual, a Chief Cruz, who was also terminated, who says, yeah, I'm not really the best person to answer that question. But then the plaintiffs go on to argue or suggest that a statement by Cruz that Spiegel had appeared before the board was somehow indicating that he had had a hearing. Clearly, this was not a termination proceeding, and we cite to the pages in the record that stand for the proposition that not only that Cruz said he wasn't the best one to address the issue, but that this was not a termination proceeding. Next, there's a reference to a Chief Becker and the fact that he supposedly had a termination hearing. Again, the plaintiffs misstate the record on page three of their brief, citing the joint appendix at 586, claiming that Mr. Becker was offered a pre-termination hearing. In that case, it was clear, as set forth by Mr. Gans, who the plaintiffs rely on at page 586 in the joint appendix, that he was not being threatened with termination at the time he requested a hearing. And in fact, he had already been terminated. And then he requested a hearing on pages 586 and 587. Further, if you look at the joint appendix with respect to the testimony of the chief who was involved in that decision at the time, at pages 705 and 706 of the joint appendix, Chief Bealey says that Mr. Becker had already been terminated. And then after the fact, the issue of whether he was going to have some sort of a post-termination, presumably name-clearing hearing, it's not really specified to be candid with the court. At that time, then it was discussed, and Mr. Becker decided that he was not going to seek such a hearing. So there's never been an example of this board applying these rules to the termination of a chief-level employee. Go ahead, Your Honor. I have a question about your reliance on Johnson. And I understand your position that this is like the handbook in Johnson, right? Is there any, how do you factor in Daniels, that also has something that's called a handbook and a rules and regulations manual? And I understand one's the Court of Appeals and one's the Supreme Court. What do you see as the factual differences? And if this is a factual issue, is it appropriate for summary judgment? The difference between the two cases is that in the Daniels case, they went so far in the manual as to say that we will not terminate an employee unfairly. And essentially used the term just cause. The term just cause does not appear in the rules that are being argued in this case in support of the plaintiff's claim. And so I think that- What about the use of the word permanent? Permanent. What's the import of that? In this case, Judge, the use of the term permanent, I would argue, is irrelevant. For the reason that these rules were created by the chief and the chief retained the sole discretion to amend these rules at his discretion. This was a unilateral application of rules where he had the option of amending and interpreting those rules. In this case, there's no mention anywhere in the rules that they in any way govern or apply to the conduct of the board. And so in a sense, the board never ratified these rules. There's no reference to the board in the rules. And the chief specifically, and we've set that forth in the brief, reserved the right to unilaterally amend those rules at his choice and to interpret those rules. So the employees in this case had no reasonable basis to assume that they had some sort of a right to rely on those rules. And with respect to the use of the term permanence, with all due respect, your honor, to the extent that it's there, I simply don't think it's binding on our board in this case. They had no reasonable basis to rely on that language in the rules. This is a one way street and the case law is pretty clear that if it doesn't create a basis both ways for the parties to enforce and seek interpretation of the rules. Then in fact, the employee has no reasonable expectation at all that these I understand there was no evidence that those rules were ever approved by the board. But is there a conflict of facts over whether there's been an in essence, an acquiescence by the board into the use of these rules to govern the fire department? No sir, and in fact, when the depositions of Robin Harris, a then board member and a present board member was taken, he had no familiarity with the use of the rules. He didn't know what the rules stated or provided with respect to discipline of chief level officers. And former chief Gans was asked and he stated in his testimony that it was his opinion that they were in fact at will employees. And he couldn't identify any circumstance where at a termination issue with respect to any officer of the district these rules had ever been applied. And so I don't believe there is a conflict. Now there is some testimony that says that from time to time, there were two sets of rules by the way. There was operating procedures and these disciplinary rules that from time to time, a piece of one of those may be brought to the board and they may have inquired about them. But there's no testimony that the board was ever asked to apply anything with respect to progressive discipline or termination from these rules with respect to an officer of the district, i.e., a chief. And given that, in this case, Chief Bealey reserved the right to change those rules essentially at a moment's notice. And I don't want to suggest that there's a record that that was actually happening, that they were being changed daily. He retained the right to do that. And I think under the law, it's clear that if that's the case, then again, there's no reasonable expectation of ongoing or permanent employment. We have- The board terminated these individuals. Did the board also approve their hiring? Is there any evidence of that? Does the chief hire them with board approval or does the board ever get involved in the hiring or administrating of this level of individuals? I don't think that's particularly in the record here, Your Honor. But in candor, I believe that ultimately what happens is that there's a search that's presented. And by history, in some instances, and again, I don't know that this is before our record, but you asked us in our record, but you asked the question. Usually, there's a search committee that goes out and seeks these officer level, at least at the top chief. Here, we're talking about multiple levels of chief. I think there were four levels of chief. They go out with a search committee and then have that list pared down to two or three candidates, and then the board will decide on those individuals. In this case, these were all long term employees. They were 20, 25 year employees, and they predated all the members of this particular board. But I would suggest that while there's no record in this case of that that's before this court, a board would have had some say in the hiring of these individuals as lower level firefighters. I think that's the actual history, is that all of these guys came up through the ranks and they were 25 to 30 year employees. I hope I'm not misspeaking, but I don't think any of them was hired. But do you say the record's not developed on that about- I don't believe so in terms of- Not maybe these individuals, although that would be pertinent, but this level has to have some sort of involvement or approval by the board to hire. I don't believe that that's part of the record in this case, but I just want to be clear that I wouldn't deny that the board, in all likelihood, a board was involved in the final selection process, your honor. With respect to the issue of MAPA, MAPA only comes into play here in the event that this court were to decide that there was a property interest in these individuals and continuing with their employment. If this court finds, as we suggest, that there is no property interest, then we don't get to MAPA. If there is a decision by this court that these individuals had a property interest, then they failed to comply with and exhaust their remedies under MAPA by requesting a hearing in order to evaluate this termination process. And once they waive that right, then they waive their challenge to any alleged constitutional violation or violation of a constitutional right and they fail to comply. And that's the case in this case, as these individuals did not request any type of hearing. With respect to, there's an issue of respondeat superior liability. It's our position that that does not apply in this case in a 1983 claim that is briefed in our briefs in this case. And ultimately, the plaintiff's claim in this case was that this was a respondeat superior case. There's subsequent argument in their motion to reconsider and in their briefs in this matter that somehow this was something different, that this was a policy making issue. But that was not the position that was alleged in the complaint in this case. And that issue wasn't raised at the trial court level when we filed our summary judgment. So we believe that there is no proper theory of respondeat superior liability here in a 1983 claim. I see that my time is about to end in about three seconds, so I thank you very much for your attention today. Thank you. Jacobson, I think your time's expired. Does he have any time left? No, your honor, Mr. Jacobson's time expired. Okay, I'll give you one minute. Judge Smith, I want to address your statement that the rule's never been approved by the board. The evidence, I think, is strong enough for a fact finder to find that it was, and we're entitled to that inference. The rules have been in place for over 45 years. The board was the only one who ever did any amendments. There's no evidence in the record of the chief ever amending it. When there were amendments, they were brought to the board. Board reviewed it, approved that amendment. They're amending the document. It's reasonable to infer that the document is theirs. On the last issue of the hearsay, hearsay is an objection. The newspaper articles were there. We took the statements right off of their website. They don't deny the statements, that their transcripts of what they said at the hearing are accurate. I attached an article showing why that type of evidence is admissible and why the Court of Appeals and the Supreme Court accept that type of evidence all the time. Also, a lot of things you said are completely contrary to the facts that we have. Factual dispute, summary judgment should not have been granted. We ask that you reverse. Thank you. Okay, thank you, Mr. Jacobson. We thank you both for your arguments, and we'll take it under advisement. Thank you.